IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07 CV 394

| | |
|---|---|
| RICHARD HAUSSLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| TRITON PCS HOLDINGS COMPANY, LLP ) | |
| d/b/a SunCom Wireless; SUNCOM ) | |
| WIRELESS MANAGEMENT COMPANY, ) | |
| INC., d/b/a SunCom Wireless, and SUNCOM ) | |
| WIRELESS OPERATING COMPANY, LLC, ) | |
| d/b/a SunCom Wireless, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment. For the reasons set forth below, the motion is **GRANTED.**

## FACTS

The facts, viewed in the light most favorable to the Plaintiff, Richard Haussling, are as follows. Plaintiff Richard Haussling ("Haussling" or "Plaintiff") became employed by Defendant SunCom Wireless ("SunCom" or "Defendant") when, in late 2004, SunCom purchased certain assets from Cingular which had been part of AT&T Wireless. Haussling was Manager of Indirect Sales. Haussling had 5.5 years prior experience with AT&T/Cingular.

In early 2006, Haussling came under the supervision of Russell LeBoff, a manager employed by the employer. Defendant alleges that during this time period there was discussion

regarding Plaintiff's attitude problems and that Plaintiff needed to "make a change ASAP." Defendant also alleges that around the same time, Plaintiff and another supervisor discussed the possibility of Plaintiff receiving a severance package. Shortly thereafter, Haussling and a younger male employee (Cherry) applied and interviewed for a promotion to the position of Area Director of Indirect Sales. Leboff believed that Cherry's overall wireless background, education and interview skills were superior to Plaintiff's and therefore offered the position to Cherry. SunCom promoted Cherry to the new position and Haussling reported to Cherry after March 2006.

Defendant alleges that on June 13, 2006, Cherry and Leboff met with Haussling to discuss his performance since Cherry's promotion. Cherry and Leboff advised Plaintiff on improvements going forward, and Leboff also summarized the conversation in an email, to which Plaintiff made no response.

Following the June 13 meeting, Defendant alleges that Plaintiff did not improve. Defendant also alleges that Senior TMS management reported to Leboff and Cherry that the service to their account had been so poor they did not wish to extend their agreement. Defendant alleges that it decided to give him an opportunity to improve by issuing a Performance Improvement Plan ("PIP").

On July 17, 2006, Cherry placed Haussling on a PIP. The PIP outlined in detail Plaintiff's performance problems, including his negative attitude, his inflammatory emails with no attention to solutions, and complaints by his agents. The PIP also included a thorough plan for improvement, referencing in detail the requirements of his job description, as well as

outlining a requirement that he provide a weekly agenda and daily log of his activities. Defendant alleges that in the PIP meeting, Plaintiff was informed that he must demonstrate improved performance within 30 days, or he could be terminated. However, as with all SunCom PIP's, it remained in effect for one year, such that a further occurrence could also lead to termination.

On July 20, 2006, Haussling filed with the EEOC a charge of discrimination on the basis of age (Charge No 430-2006-04229) related to the promotion of Cherry. On July 24, Plaintiff responded to the PIP in a lengthy document. Nothing in Plaintiff's written response referenced discrimination, nor did he verbally allege or discuss discrimination or the Charge. (Pl. I at 179-182.) A few days after Plaintiff provided his response, Cherry learned that Plaintiff had visited the EEOC because Plaintiff had submitted a daily log of his activities to Cherry.

Between June and September 2006, sales under Haussling's supervision increased dramatically, from 86% of quota to 112% of quota. In August 2006, Cherry advised Haussling that he had completed the 30-day plan and informed Plaintiff verbally and in a follow-up email that "although you have made improvements in the areas described above, continued improvement in the following areas is necessary to meet the job requirements and continue in your position as areas manager." On September 26, 2006, Cherry communicated to his supervisors and Human Resources that while he did not see an immediate need for Plaintiff's termination, he did not think Plaintiff was performing "to the level that would be expected for his position." Therefore, Cherry planned to continue to monitor and evaluate Plaintiff's performance.

In late September 2006, the EEOC issued a right to sue ("RTS") on the charge 430-2006-04229. Immediately after the EEOC's investigation ceased, Plaintiff alleges that Cherry began to make grossly inaccurate statements regarding Haussling's performance and customer relations. However, Defendant alleges that neither Leboff nor Cherry were aware that the RTS had been issued.

On October 12, 2006, Cherry received an email from TMS' CFO, one of SunCom's largest clients, identifying a long list of issues relating to SunCom's service of its account, and requesting a discussion with Cherry. Around the same time, Cherry learned that Plaintiff had failed to resolve a simple credit issue for another agent. Finally, Plaintiff had not followed the development plan set out in his PIP, which required him to develop a tactical plan. On November 3, 2006 Cherry and LeBoff terminated Haussling's employment with SunCom.

On November 21, 2006, Haussling filed with EEOC a charge of retaliation under the ADEA, charge number 430-2007-00779, alleging age discrimination and that his termination was in retaliation for his earlier Charge. On June 26, 2007, Haussling received a RTS on that charge. The Complaint in this case was filed September 30, 2007, alleging only claims for ADEA retaliation.

## DISCUSSION

**A. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. C. P. 56(e); *Anderson*, 477 U.S. at 250. This is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole*, 48 F.3d. 1376, 1381 (4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Indeed, summary judgment is

5

only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and, therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151.

**B. Retaliation Claim**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to retaliate against an employee because he has made a good faith complaint of Title VII discrimination. 42 U.S.C. § 2000e-3 (a); *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). Here, Plaintiff lacks direct evidence that SunCom retaliated against him in violation of Title VII, and therefore proceeds under the burden-shifting framework from *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). A plaintiff may prove retaliation under the burden shifting framework of *McDonnell Douglas* by first establishing a prima facie case for retaliation.[1] If the Plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to produce evidence that the Defendant took the adverse employment action for a legitimate, non-retaliatory reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the Defendant meets its burden of production, then the Plaintiff must prove by a preponderance

---

[1] To prove a prima facie case of retaliation, Haussling must show (1) that he engaged in a protected activity; (2) SunCom took adverse employment action against him; and (3) there is a causal connection between the two. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

of the evidence that the employer's stated reason for taking the adverse employment action was in fact a mere pretext for retaliation. *Reeves*, 530 U.S. at 143.

Plaintiff Haussling claims that SunCom terminated Haussling's employment in retaliation for Haussling's filing of the July 2006 charge of age discrimination. Haussling attempts to establish a prima facie case by asserting that (1) Haussling engaged in protected activity on July 17, 2006, when Haussling filed with the EEOC a charge of discrimination on the basis of age over 40 related to the promotion of Cherry; (2) on November 3, 2006, SunCom terminated Haussling's employment and; (3) there is a causal connection between the two because Haussling alleges that between June and October 2006, absolute sales in the area under Haussling's supervision had increased from 2204 to 2649 gross adds and statements to Cherry related to Huassling's performance were highly inaccurate.

However, even assuming (without deciding) Haussling can establish a prima facie case of retaliation, summary judgment is appropriate because Haussling has failed to provide sufficient evidence that is contrary to SunCom's legitimate, non-retaliatory reason for terminating him. SunCom alleges that Haussling was terminated due to Haussling's poor performance after repeated coachings and a detailed PIP designed to help him meet his job requirements. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any employment decision." *Evans v. Tech Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Defendants have a long and thoroughly documented record of Plaintiff's performance problems. Even prior to the PIP in July, his supervisors believed his performance needed improvement "ASAP." Haussling expressed his inability to work with management. Haussling demonstrated on several occasions his lack of regard for Leboff and

Cherry, threatening Leboff that "he'd made the worst mistake in his life" and calling Cherry "unethical" in an email to other managers and his direct reports. In addition, he demonstrated his inability to handle the basic functions of his job: he was unable to resolve problems his subordinates were expected to handle independently and he did not communicate with Cherry regarding the critical problems with TMS.

Furthermore, SunCom's assessment of these issues as problems could not have been a surprise to Plaintiff. Defendant addressed the deficiencies with Plaintiff informally on a number of occasions, more formally in June, and through a PIP in July. Plaintiff was fully informed at that time that his performance was poor enough that termination was an option if significant improvement did not occur. Defendant communicated to Plaintiff on several occasions what they expected of him, and SunCom prepared thorough plans to help him improve, even considering other roles for him in the Company. Therefore, SunCom has met its burden of articulating a legitimate non-retaliatory reason for terminating Haussling.

Haussling can show that SunCom's reasoning is a mere pretext either by showing that SunCom's explanation is unworthy of credence or through circumstantial evidence sufficiently probative of retaliation. *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). Haussling puts forth three arguments why SunCom's reasoning was mere pretext for retaliation: (1) the termination PIP was allegedly inaccurate; (2) Cherry spoke about him to agents; (3) Cherry spoke about him to ISRs. However, Plaintiff has produced no evidence of the accuracy of this speculation, nor do any of the factors, even if true, support his claim of retaliation.

**1. Alleged inaccuracy of the termination notice**

Plaintiff offered as evidence of Cherry's retaliation his opinion that the content of his termination notice was inaccurate. (Pl. I at 213.) Plaintiff's support for his accusation that the termination notice was inaccurate rests fully on his lack of recollection and speculation as to what might have occurred despite Cherry and Leboff discussing as well as documenting specific concerns with Plaintiff's performance. These concerns were not subjective assessments of his ability, but were based on demonstrated behavior with customers and within SunCom. In addition to his own testimony regarding his performance, Plaintiff relies on the testimony of Grimsley and Chase, his subordinates and Jim McEvory, a peer at TMS, to support his contentions that the substance of the PIP is incorrect. However, their perceptions have no bearing on the question of his performance as "[i]t is well-settled that it is the perception of the decision-maker, and not Plaintiff's perception, that is relevant in determining whether Plaintiff can show [he] was meeting [employer's] job-related expectations." *Bell v. BB&T,* 2007 WL 4233165, *11 (M.D.N.C. 2007), citing *Evans* (where plaintiff categorized her performance problems as merely "minor or minimal gripes of her supervisor," the Court considered among other factors, the Plaintiff was on a PIP prior to her termination); *see also King v. Rumsfeld*, 328 F.3d 145, 149 F N 5 (4th Cir. 2003) (the Fourth Circuit has "long rejected" the relevance of co-worker testimony in evaluating a plaintiff's performance).

Furthermore, none of these witnesses profess personal knowledge of the discussions Plaintiff had with Cherry about the situations described in the PIP. For example, Grimsley admitted that she was never part of a discussion between Plaintiff and Cherry regarding his performance, or any of the issues in the PIP. Chase's affidavit discusses his perceptions of

Plaintiff's performance but does not identify any personal knowledge of Plaintiff's performance history with SunCom, other than his own assessment. McEvoy, as a SunCom agent, acknowledged that he was not part of the higher level conversations between his management at TMS and Cherry or Leboff, and agreed that he had no idea what conversations occurred between Cherry and Plaintiff. (*See* Depositions of James McEvoy, full transcript attached as Ex. EE.)

Finally, to the extent he is relying on his prior evaluation, conducted by a previous manager, Plaintiff's past satisfactory performance and positive performance evaluation is not as significant as the behavior following that evaluation. *See Ball v. Wal-Mart Stores, Inc.*, 228 F. Supp.2d 698, 704 (W.D.N.C. 2002). In addition, that same manager acknowledged his own concerns regarding Plaintiff's ability to succeed under different management.

**2. Cherry's alleged questioning of SunCom Agents**

Plaintiff's next allegation of pretext is a claim that Cherry made statements to SunCom agents about him, somehow indicating to them that he was not performing well. (Pl. I at 274.) However, Plaintiff could not identify any affirmative statements made by Cherry. (*Id.* at 200.) The questions allegedly asked of the agents were whether they were getting support sufficient to run their businesses. (*Id.* at 174.) It was common practice for SunCom managers to make unannounced visits to agents to see how business was going. (Leboff at 35-36.) Plaintiff acknowledged that he personally contacted agents for whom his direct reports were responsible to follow up on their progress and acknowledged that he believed questions regarding the level of service were appropriate. (Pl. I at 173-174.)

McEvoy, who Plaintiff claimed had reported questioning by Cherry, testified that he only talked to Cherry periodically and described no inappropriate questions. (McEvoy at 22.) In fact,

McEvoy explained that his contacts with SunCom were mainly with Plaintiff rather than Cherry or Leboff. (*Id.* at 24.) Plaintiff has produced no other evidence regarding this alleged questioning. Therefore, Plaintiff has failed to provide sufficient proof that Defendant's legitimate non-discriminatory reasons for firing Plaintiff were pretext for him.

### 3. Cherry's alleged questioning of SunCom employees

Finally, Plaintiff alleges that Cherry retaliated against him by asking for direct reports about his performance. Plaintiff's own testimony establishes that Cherry simply asked questions about how he was doing. (Pl. I at 200.) As with agent visits, "skip level" communications were a common practice at SunCom, and Leboff also made unannounced visits to both Huffman and Plaintiff's ISRs. (Leboff at 36.) Moreover, there is nothing retaliatory about asking one employee how another is doing.

Plaintiff has not shown that any of these claims establish pretext for retaliation. Granting Plaintiff every possible inference, and assuming each of the three items were true, they do not constitute evidence of pretext. First, although Plaintiff's own correspondence and testimony establish that agent problems were not being resolved on an acceptable schedule, any misunderstanding by Cherry cannot establish pretext as "mere mistakes of fact are not evidence of unlawful discrimination." *Price v. Thompson*, 380 F.3d 209, fn1 at pg 215 (4th Cir. 2004). Similarly, assuming Cherry did engage in the other behavior Plaintiff alleges, questioning agents and ISRs, this is fully consistent with SunCom practice, and Plaintiff's own practices. There is absolutely no evidence that anything inappropriate occurred, and this behavior is fully consistent with Cherry's concerns that Plaintiff was not serving either agents or ISRs as well as he should.

**CONCLUSION**

Plaintiff's allegations consist of guesswork and suggestions, in sharp contrast to SunCom's facts establishing his poor performance and its ongoing attempts to improve his performance problems. Those attempts began well before any protected activity and continued as agent relationships suffered and he did not adequately prepare business plans. Plaintiff simply cannot establish that SunCom's action in response to his poor performance is an explanation unworthy of credence.

In sum, Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact that may be submitted to a jury. SunCom is therefore entitled to judgment as a matter of law. For these reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

Signed: June 19, 2009

Graham C. Mullen
United States District Judge